IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNIVERSITY OF WISCONSIN HOSPITALS       OPINION AND ORDER
AND CLINICS AUTHORITY,

                                  15-cv-280-bbc

      Plaintiff,

  v.

BANK OF AMERICA GROUP BENEFITS
PROGRAM,

      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff University of Wisconsin Hospitals and Clinics Authority contends that
defendant Bank of America Group Benefits Program improperly denied plaintiff benefits
under the terms of the Bank of America Benefits Program, an employee benefit plan subject
to the Employee Retirement Income Security Act.  In an effort to recover these benefits,
plaintiff has filed a claim under 29 U.S.C. § 1132(a)(1)(B).  Both parties have filed motions
for summary judgment on plaintiff's ERISA claim.

After reviewing the parties' briefs and supporting materials, I am granting defendant's
motion and denying plaintiff's.  Although plaintiff is empowered to sue under §
1132(a)(1)(B) as the assignee of a plan beneficiary, the plan beneficiary who assigned her
claim to plaintiff never submitted a claim for benefits under the plan, did not exhaust her
administrative remedies and is not entitled under the plan to the benefits plaintiff is seeking.
By obtaining an assignment of its patient's claims under the plan, plaintiff is entitled to raise

1

a claim under § 1132(a)(1)(B), but it is not relieved of any of the prerequisites or limitations on claims generally applicable to the plan's beneficiaries.  In other words, plaintiff may have acceded to its patient's rights under the benefit plan, but those rights do not entitle the patient to payment for the services plaintiff provided.  Instead, plaintiff's right to payment, if any, is governed by its in-network provider agreement with Aetna.

From the parties' summary judgment materials and the record, I find that the following facts are material and not subject to genuine dispute.

## UNDISPUTED FACTS

Defendant Bank of America Group Benefits Program is an employee benefits plan governed by the Employee Retirement Income Security Act.  The plan, which is offered to Bank of America employees, includes a group health insurance policy offered and administered by Aetna.  J.F. is a former Bank of America employee and a plan participant entitled to health insurance coverage under the Aetna group health insurance policy.

In November 2009, J.F. was given a diagnosis of chronic renal disease and underwent a renal transplant.  In early-2014, J.F. began to experience symptoms suggesting that her pancreas was rejecting the renal transplant.  She was admitted to the University of Wisconsin Hospital twice in March 2014: first on March 7, 2014 and then again on March 18, 2014. Over the course of these two stays, J.F. underwent various tests and received treatments. The cost for these services was approximately $150,000.

J.F.'s hospital stays were covered by the Aetna policy associated with her benefit plan,

2

which provides that Aetna will pay 80% of the covered cost.  Moreover, because plaintiff is an "in-network" provider, J.F. was not required either to precertify her hospital stays or submit claims to Aetna for reimbursement.  These requirements—precertification and claims submission—were plaintiff's responsibility.  The plan informs its insured participants that although precertification is required for certain services, when they are treated by a network provider, the precertification request "must be submitted by [the] provider."  Similarly, with respect to insurance claims, participants are informed: "You have no claim forms to file for services provided by an in-network provider. The physician and/or facility will file these claims with Aetna for you."  (It appears that the provider's precertification obligations and claim submission requirements are described in a separate "provider contract" between Aetna and plaintiff.  Although the parties refer to this agreement at various places in the record, neither party has submitted it in connection with its motion.)

Although it was plaintiff's responsibility, plaintiff did not precertify either of J.F.'s hospital stays before admitting her for treatment.  In both cases, plaintiff requested precertification one day *after* plaintiff was admitted—March 8 for the first stay and March 19 for the second.  In both instances, Aetna denied plaintiff's late precertification requests.  Notwithstanding Aetna's refusal to grant plaintiff's precertification requests, plaintiff continued to provide J.F. inpatient treatment services and then attempted to charge Aetna for the services.  Aetna refused to pay plaintiff for the treatment it provided J.F. during her two hospital stays because plaintiff "fail[ed] to follow [the] contractual notification requirements."  Aetna also informed plaintiff that J.F. was not responsible for the charges.

3

(Neither party presents any evidence that plaintiff has billed J.F. for her treatment and neither party explains why she has not been billed.)

On June 18, 2014, plaintiff attempted to appeal Aetna's decision to deny payment for the services plaintiff provided to J.F..  In both appeals letters, plaintiff stated: "With regard to late notification, our office attempted online notification through Navinet on [the day following plaintiff's admissions] within our contract guidelines."  Aetna denied plaintiff's appeals for payment in two letters dated June 26 and 27, which related to the second and first admission respectively.  In both letters, Aetna explained that payment was properly denied "due to failure to follow Aetna contractual notification requirements" and that plaintiff could further appeal its decision in writing.  The letter informed plaintiff that "[a] complete description of [plaintiff's] appeal rights and submission timeframes can be found on [Aetna's] secure provider website via Navinet[.]"

On November 5, 2014—131 days after plaintiff's initial appeal was denied—counsel for plaintiff sent Aetna a letter, which he referred to as a "second level appeal."  Counsel stated in the letter that although Aetna denied payment "due to alleged untimely notifications," plaintiff had attempted to notify Aetna "within 24 hours of admission through Navinet, which [was] within [plaintiff's] contractual guidelines with Aetna." (Again, the "contractual guidelines" referred to in counsel's letter are not before the court.)  On December 23, Aetna denied plaintiff's second level appeal on the ground that it was untimely.  Aetna explained that "appeal requests must be filed within 60 days of the reconsideration decision.  Because we reconsidered your claim on appeal on 06-27-2014, and

4

we did not receive this appeal request until 11-10-2014, our previous decision regarding these charges will remain unchanged."

Two days after Aetna denied plaintiff's second level appeal, J.F. executed an assignment granting plaintiff all rights to insurance payments or other benefits to which she is entitled under the plan.  Plaintiff made one last effort to secure payment on January 9, 2015 and when that request was denied, filed suit against Aetna in the Circuit Court for Dane County on March 27, 2015, asserting a variety of state law claims.  After the case was removed to this court, plaintiff dismissed its claims against Aetna pursuant to Fed. R. Civ. P. 41 and filed an amended complaint against defendant Bank of America Group Benefits Program seeking benefits under 28 U.S.C. § 1132(a)(1)(B).


OPINION

Plaintiff is proceeding on a claim for benefits under 28 U.S.C. § 1132(a)(1)(B), which provides that an employee benefit plan "participant or beneficiary" may bring a civil action to "recover benefits due to him under the terms of his plan, enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Defendant contends that plaintiff's claim under § 1132(a)(1)(B) fails for three reasons. First, plaintiff is not entitled to file suit under § 1132(a)(1)(B) because it is neither a "participant [n]or beneficiary" under the Employee Retirement Income Security Act. Second, even if plaintiff did qualify as a participant or beneficiary, plaintiff did not exhaust the administrative remedies set forth in the plan before filing suit.  Third, Aetna's decision

5

to deny plaintiff payment was not arbitrary or capricious. I will address each of these arguments in turn.

## A. Plaintiff's Status as an Assignee

Under § 1132(a)(1)(B) only a plan "participant" or a plan "beneficiary" has the right to file suit. As a healthcare provider, plaintiff is not a plan "participant," which ERISA defines as an "employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 28 U.S.C. § 1002(7). Plaintiff also is not a "beneficiary" because it has not been designated as such by a participant or the terms of the plan as entitled to a plan benefit. 28 U.S.C. § 1002(8).

However, plaintiff is not proceeding on its own behalf as either a participant or beneficiary. Instead, it is proceeding as assignee to the rights and obligations of J.F., who is both a plan participant and beneficiary. Defendant has not identified any language in the plan that might limit J.F.'s ability to assign her rights under the plan to plaintiff. Accordingly, J.F.'s assignment is valid. Pursuant to this assignment, plaintiff has whatever rights J.F. would have if she pursued the action herself. Plumb v. Fluid Pump Serv., Inc., 124 F.3d 849, 864 (7th Cir. 1997) ("[E]lementary contract law provides that upon a valid and unqualified assignment the assignee stands in the shoes of the assignor and assumes the same rights, title and interest possessed by the assignor.") (internal citations omitted); Decatur Memorial Hospital v. Connecticut General Life Ins. Co., 990 F.2d 925, 927 (7th Cir. 1993) ("An assignee cannot have greater rights than the assignor possessed, and . . . the beneficiary

6

cannot obtain more than the plan provides in writing.").

By stepping into J.F.'s shoes pursuant to an assignment, plaintiff runs into problems because it is unclear to what extent, if any, J.F. herself has a claim for benefits under the plan. The parties cite no evidence that J.F. ever received a bill or was otherwise charged by the University of Wisconsin Hospitals for her inpatient treatment.   As far as J.F. is concerned, she received exactly what she is entitled to under the plan—medical care for which she is required to pay only 20% of the cost.  In other words, it is unclear how *plaintiff's* inability to recover its costs under its provider contract with Aetna amounts to a denial of *J.F.'s* rights under the plan. Pennsylvania Chiropractic Association v. Independence Hospital Indemnity Plan, Inc., 802 F.3d 926, 928 (7th Cir. 2015) ("No employee's benefits are at issue and none had to pay an extra penny as a result of the insurer's treatment . . .; the plans' duties to their participants are unaffected by this litigation.").  If J.F. does not have a claim and is not owed anything by Aetna, what difference does it make whether she assigns her rights under the plan to plaintiff?

Unfortunately, neither party addresses this fundamental issue. Instead, the parties simply act as if plaintiff's efforts to obtain payment were taken on behalf of J.F., whose "claim" was denied when Aetna refused to pay plaintiff.  This willingness of litigants to conflate the rights and obligations of in-network providers with the rights and obligations of participants under their benefit plans has confounded both this and other courts. Pennsylvania Chiropractic Association, 802 F.3d at 929-30 (distinguishing between provider's rights under contract and participant's rights under benefit plan); Rojas v. Cigna

Health and Life Ins. Co., 793 F.3d 253, 257 (2d Cir. 2015) ("Rojas has sued under the wrong agreement. Approved provider status in Cigna's network is a function of Rojas's provider contract with Cigna. When we pointed this out to its counsel at oral argument, Rojas continued to press the claim that it is a beneficiary under ERISA and can sue under the Benefit Plan. So be it."); University of Wisconsin Hospitals and Clinics Authority v. Kay Kay Realty Corp. Flexible Benefit Plan, 14-cv-882-bbc, 2015 WL 9028080, at *3 (Dec. 15, 2015) ("Doctors' and hospitals' rights under their provider contracts with insurers are unrelated to an insured's rights under a benefit plan[.]"); University of Wisconsin Hospitals and Clinics Authority v. Aetna Health & Life Ins. Co., — F. Supp. 3d —, 2015 WL 6736983, at *4 (W.D. Wis. Nov. 3, 2015) ("To the extent that UWHCA contracts with insurance companies like Aetna for coverage of payments, perhaps *that* contract could also serve as a basis for a state law claim."); Merrick v. UnitedHealth Group Inc., 127 F. Supp. 3d 138, 151-52 (S.D.N.Y. 2015) ("However, as [defendant] aptly points out, [plaintiff] is asserting his own right to payment, not his patients' right under their healthcare plans. Notwithstanding whether [plaintiff] obtained valid assignments from his patients, [plaintiff's] patients' rights are not at issue in the instant litigation.").  If plaintiff wants to proceed under its assignment from J.F., it is free to do so, but plaintiff has no greater rights and obligations than J.F. would have had she brought this suit herself.  Plaintiff cannot supplement its rights under its provider contract with J.F.'s rights under her benefit plan.

B. Plaintiff's Failure to Exhaust Plan Administrative Remedies

One of J.F.'s obligations that either she or plaintiff needed to satisfy before filing suit was the administrative exhaustion of her claim. Although an exhaustion requirement is not set forth in the Employee Retirement Income Security Act itself, the Court of Appeals for the Seventh Circuit has "interpreted ERISA as requiring exhaustion of administrative remedies as a prerequisite to bringing suit under the statute." Schorsch v. Reliance Standard Life Insurance Co., 693 F.3d 734, 739 (7th Cir. 2012) (internal quotations marks omitted). As the court of appeals has explained, "[e]xhaustion of plan remedies is favored because the plan's own review process may resolve a certain number of disputes; the facts and the administrator's interpretation of the plan may be clarified for the purposes of subsequent judicial review; and an exhaustion requirement encourages private resolution of internal employment disputes." Stark v. PPM America, Inc., 354 F.3d 666, 671 (7th Cir. 2004). A claimant's failure to exhaust plan administrative remedies or to comply with deadlines for filing administrative claims can be grounds for dismissal. Orr v. Assurant Employee Benefits, 786 F.3d 596, 600-01 (7th Cir. 2015).  Neither J.F. nor plaintiff on her behalf can file suit to recover her benefits under the plan until after her claim for benefits has been presented to the plan administrator and the plan's claims procedure has been exhausted.

The only evidence plaintiff cites to support its exhaustion argument are its efforts to obtain payment pursuant to the terms of its provider contract.  However, by attempting to obtain payment under the provider contract, plaintiff was not exhausting J.F.'s remedies under the plan; it was exhausting the claims procedure designed for entities like itself that

have in-network provider payment disputes.  Dkt. #36-2 at 70 ("Pursuant to a *separate contract* between Plaintiff and Defendant, Plaintiff may give online notification to Defendant through 'Navinet'.") (emphasis added); Dkt. #49 at ¶ 4 ("If you do not agree with our decision, you may appeal this decision in writing[.]  A complete description of your appeal rights and submission timeframes can be found at *our secure provider website* via Navinet[.]") (emphasis added); Dkt.#36-2 at 77 ("The Aetna appeal process (i.e. the rights to provider internal dispute resolution *referred to in the provider contract*) has been exhausted.") (emphasis added).  The claims procedures applicable to in-network providers are clearly distinct from those governing participants' claims.  The latter are set forth in the plan and are governed by ERISA; the former are set forth in the provider agreement between plaintiff and defendant and are not governed by ERISA and its applicable regulations.  To the extent J.F. had a claim, she had to exhaust it through the plan's administrative claims procedure; plaintiff's efforts taken on its own behalf to obtain payment under the provider contract do not suffice.

## C. Merits of the Claim Denial

Even if I were to assume that J.F. had a viable claim for benefits and that she exhausted the plan's claims procedure (or plaintiff exhausted the claim procedure on her behalf), I would still uphold the denial of this supposed claim because the plan clearly provides that Aetna is not responsible for payment when the participant fails to precertify inpatient treatment.

In evaluating claims under § 1132(a)(1)(B), a district court is required to defer to the decision of plan administrators where the plan provides the administrator with discretionary authority to interpret the plan and decide claims.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Here, the plan provides that Aetna has "discretionary authority to determine eligibility for benefits and construe the terms of the applicable component plan and resolve all questions relating to claims for benefits under the component plan." Accordingly, I am required to uphold Aetna's decision to deny plaintiff's claims for benefits so long as its decision was not "completely unreasonable."  Manny v. Central States, Southeast & Southwest Areas Pension and Health and Welfare Funds, 388 F.3d 241, 243 (7th Cir. 2004).

Defendant contends that Aetna denied plaintiff's claims because it failed to obtain precertification before admitting and treating J.F.  The plan clearly provides that precertification is required before a participant is admitted to a hospital and treated.  It further provides that failure to obtain precertification "relieve[s] Aetna or Bank of America from any financial liability for the applicable service(s), if those services are rendered." Plaintiff does not dispute that it did not attempt to precertify J.F.'s treatment until the day *after* she was admitted and that its requests for precertification were *denied* in both instances. (Plaintiff does not contend that Aetna violated the terms of any agreement by refusing to precertify the care plaintiff provided to J.F.)  Accordingly, Aetna did not abuse its discretion by denying plaintiff's request for payment.  The plan made it clear that it would not pay for inpatient treatment that it had not precertified.

Plaintiff contends that notwithstanding the clear plan terms and its failure to obtain precertification, the court should remand the case to the plan administrator for further consideration because of procedural defects in Aetna's administrative claims procedure. In particular, plaintiff argues that Aetna never notified J.F. that plaintiff's request for payment was denied and that the claims determination Aetna sent to plaintiff failed to give specific and detailed reasons for denying coverage. These arguments are insufficient to avoid summary judgment.

Plaintiff's complaint that Aetna failed to provide J.F. notice fails because, as I noted above, there is no evidence that she submitted a claim in the first place. The plan provides that when a policy holder such as J.F. is treated by an in-network provider such as plaintiff, the policy holder is not required to submit a claim. Instead, the provider is responsible for submitting a claim on behalf of the policy holder and obtaining payment under the agreement between the provider and Aetna. As required by the plan (and presumably by the applicable provider contract), Aetna communicates with in-network providers directly regarding its obligation to pay for services it provides to Aetna policy holders. J.F. or her representative must submit a claim under the plan before her claim can be "denied," thereby triggering her rights under 29 C.F.R. § 2560.503-1(g)(1).

Plaintiff's contention that Aetna's denial of its claim for payment of benefits was bereft of sufficient detail fails for similar reasons. Again, 29 C.F.R. § 2560.503-1(g)(1), which governs the amount of detail that must be set forth in a claim denial letter, is applicable only when the plan administrator is denying a participant or beneficiary's claim.

12

In this case, there is no evidence that plaintiff's requests for payment amounted to a claim for benefits submitted on behalf of J.F. under the plan.   In any event, even if I were to assume that the requests for payment were governed by these provisions, the claim denial letters had sufficient detail to satisfy the governing regulations.   As both the first- and second-level appeals letters demonstrate, plaintiff understood the claim was being denied because plaintiff failed to obtain precertification before providing services.   In both letters, plaintiff and its counsel referred to plaintiff's failure to obtain precertification and provide timely notice.

Finally, even if there were procedural defects in Aetna's claims procedure, plaintiff would not be entitled to a remand.   A remand based on procedural defects is appropriate only when there is evidence that but for the procedural error, the plan administrator's decision might have been different.   Schorsch v. Reliance Standard Life Insurance Co., 693 F.3d 734, 739 (7th Cir. 2012); University of Wisconsin Hospitals & Clinics Authority v. Aetna Health & Life Insurance Co., No. 15-cv-283, 2015 WL 5123734, at *3 (W.D. Wis. Sept. 1, 2015); Clark v. CUNA Mutual Long Term Disability Plan, No. 14-cv-412-wmc, 2016 WL 1060344, at *8  n.11 (W.D. Wis. Mar. 15, 2016) ("Significant procedural errors that deprive a claimant of full and fair review may justify reinstatement of benefits or an order for remand[.]  However, 'substantial compliance' with the regulations is sufficient; not every technical error will undermine the administrator's decisions) (citing Brown v. Retirement Committee of the Briggs & Stratton Retirement Plan, 797 F.2d 521, 535-36 (7th Cir. 1986))). Technical missteps in Aetna's claims procedure are not grounds for

remand when there is no reason to believe that these missteps led to an erroneous decision. In essence, even if Aetna's actions could be fairly construed as errors, they were harmless.

## D. Defendants' Request for Attorney Fees

I am denying defendant's request for an attorney fee award under 29 U.S.C. § 1132(g)(1). Section 1132(g)(1) provides that in an action to recover benefits under the Employee Retirement Income Security Act, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  The Supreme Court held in Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 255 (2010), that in order to obtain § 1132(g)(1) fees, the moving party must first obtain "some degree of success on the merits." Defendant has clearly satisfied this threshold requirement by obtaining dismissal of plaintiff's claims with prejudice.

Once the court has determined whether the moving party has some degree of success, and therefore may be awarded fees under § 1132(g)(1), the court must decide whether the circumstances of the case and the movant's success make a fee award appropriate. The court of appeals has recognized two tests for deciding whether to award attorney's fees under § 1132(g)(1) and has described these tests as follows:

> The first test looks at the following five factors: (1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; (3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions. The second test looks to whether or not the losing party's position was substantially justified.

14

Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical College of Wisconsin, Inc., 657 F.3d 496, 505-06 (7th Cir. 2011). The court of appeals has not said when one test should be used to the exclusion of the other, or alternatively, whether the two tests are interchangeable. Given the lack of guidance in this respect, I will use the first test, which involves a more detailed inquiry into a movant's right to attorney fees and also adequately incorporates the second test's "substantial justification" inquiry.

I conclude that the first and fifth factors—bad faith and relative merits of the parties' positions—do not support a fee award.  As noted above, there is a significant amount of confusion regarding the assignment of claims for plan benefits and in-network providers' rights to sue under their patient's benefit plan. Although in most cases providers have been unsuccessful, they have had limited success in some instances.  E.g. University of Wisconsin Hospitals and Clinics, Inc. v. Aetna Life Insurance Co., 24 F. Supp. 3d 808, 814-15 (W.D. Wis. 2014).  Accordingly, I cannot say that plaintiff filed suit in bad faith or has taken a position that was entirely without merit.

The third factor—deterrence—also fails to support a fee award.  A fee award might be appropriate if at the time this suit was filed, it had been clearly established that the type of claim at issue lacked merit, but that was not the case.  The courts have only recently begun to clarify the relationship among providers, patients and their benefit plans under ERISA.  If plaintiff continues to file these types of claims, a fee award may be necessary, but at the time this claim was filed, plaintiff's rights were not entirely clear. Thus, the courts do not yet need to resort to the deterrent effect of fee awards.

15

Although the second and fourth factors—ability to afford a fee award and benefit to the plan as a whole—weigh in favor of defendant's request for a fee award, these factors are not dispositive. First, the weight accorded to the fact that plaintiff is able to afford a fee award is lessened to some degree by the fact that defendant is also capable of affording its own attorney fees; this is not a case in which an individual plaintiff of limited means is seeking fees from a corporate defendant insurance company. Second, the benefit to the plan as a whole is negligible in light of the fact that the case involved a single participant's claim that defendant believes it is not obligated to pay.  Although the plan participants benefit from not having to pay this claim in the form of slightly lower premiums, the amount at issue is relatively negligible when compared to the size of the plan and the number of participants.

ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by defendant Bank of America Group Benefit Program, dkt #36, is GRANTED. The motion for summary judgment filed by plaintiff University of Wisconsin Hospitals and Clinics Authority, dkt #32, is DENIED.

16

2. The clerk of court is directed to enter judgment in favor of defendant and close the case.

Entered this 10th day of May, 2016.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge